JOSEPH REDFERN v. HANCOCK CO. (COMR'S.)

1. JOINT DITCHES MUST BE JOINTLY MAINTAINED.

The intention of the law-making power, which recognized the necessity of joint county ditches, and provided for their construction, was that a joint method of keeping them up should be pursued.

2. PROCEEDINGS BY UPPER COUNTY, RENDERING DITCH IN LOWER COUNTY INADEQUATE, VOID.

The proceedings of the commissioners of an upper county after the construction of a joint county ditch, in ordering that the portion of the ditch in such county be enlarged by deepening and widening, thereby accelerating the flow of water, and taxing the outlet or that portion of the ditch in the lower county beyond its capacity, without notice to or agreement with or consent of the commissioners of the lower county, are inoperative and void.

3. INJUNCTION LIES IF PROCEEDINGS WERE ILLEGAL THOUGH ILLEGALITY DOES NOT APPEAR OF RECORD.

Although the steps in a ditch proceeding in the nature of the one above referred to are regular in form, so that the illegality does not appear on the face of the proceedings, yet if it appears from other sources that the commissioners proceeded contrary to law and without jurisdiction, so that no adequate remedy is pointed out by law, an injunction will lie, and in favor of a property owner whose lands will be damaged by the enlargement of the ditch in question.

NORRIS, J.

In the year 1878, a joint county ditch was constructed through the plaintiff's land by the joint action of the commissioners of Wood and Han-

cock counties, and the plaintiff's land was assessed for the cost of location and construction of said ditch. Said land is situated in Hancock county, and lies on the Wood county line.

On January 29, 1893, a petition was filed with the auditor of Hancock county by Sarah J. Pepple, praying for the cleaning out, deepening, widening and straightening, where necessary, of this joint county ditch in the county of Hancock. Such action was taken and such proceedings were had by said commissioners that an order was made by them that said ditch be cleaned out and deepened from the head of the ditch to the county line, and plaintiff's land was assessed therefor. Under this order the ditch is to be deepened below the bottom of the old ditch to an extent of one foot and forty-five hundredths through plaintiff's land, and a corresponding depth through its course in this county. The plaintiff claims that thereby the flow of water will be greatly increased from above, down upon his land, and that for this increased flow of water no sufficient outlet is provided or exists and that he will thereby suffer great and irreparable damages. That no outlet has been provided for and no arrangements made with the commissioners of Wood county therefor; nothing to them paid or arranged to be paid for the benefit of an outlet, and that the ditch as now in Wood county is insufficient to take care of the increased flow. That the ditch in Wood county is filled up and obstructed and needs deepening and widening. That the plaintiff receives no benefit, and that unless the ditch is deepened and widened in Wood county, the deepening and widening in this county will be of no use, and greatly injure and damage the plaintiff, and overflow his land, and he asks that the defendants be enjoined from cleaning out and deepening and widening said ditch as contemplated.

The answer admits the location and construction of the ditch as a joint county ditch; admits the action of the commissioners of this county, and that they are about to cause said ditch to be cleaned, deepened and widened, and that plaintiff's land was and is assessed as he alleges, and that it lies on the Wood county line, and the defendants deny all of the other allegations of the petition.

Upon the issues as thus tendered and the evidence, the common pleas found in favor of the defendants, and the case is here submitted upon the pleadings and the evidence on appeal.

It is conceded that the ditch here in controversy was established and constructed in 1878, under the laws governing the construction of ditches in more than one county. In that proceeding, it is conceded that the commissioners of Hancock and Wood county agreed as to the necessity of the improvement and amount to be paid by the upper county, which is this county, to the lower county, Wood, for the benefit of the outlet thus obtained in Wood county. And in that proceeding, and for that purpose this land of the plaintiff was assessed. The statute provides what action shall be taken by the commissioners of adjoining counties when a ditch is caused to be constructed, enlarged or repaired, where the water flows from one county over into and finds an outlet in the adjoining county, and makes provision to reimburse the lower county for any burden cast upon it as the water way for the upper county. And when the work is for the benefit of the upper county, the amount to be paid by the upper to the lower county must be determined before any work is commenced on the improvement in the upper county. This is to be settled by the joint boards of the two counties at a joint meeting of such boards.

The statute also provides what may be done when the boards do not agree, or when the upper county refuses to pay at all to the lower county for the burden of the outlet.

The purpose of the improvement contemplated in the case at bar is to enlarge by deepening and widening the portion of the joint county ditch which serves and lies in the upper county. When steps have been taken by the commissioners of adjoining counties to construct a joint ditch, and the costs and expenses of the location and survey and laying out of the ditch have been incurred and done by the agreement of the joint boards, or where they do not agree, and after wading through long and expensive litigation, as is frequently the case before a basis is reached, it appears to have been the legislative intent, as far as may be, to prevent a repetition of the same proceedings and expense. In this case the burden of the lower county has been fixed, for the original water course, and the amount to be paid by the upper county has been determined. This is a joint county ditch; it has been located and constructed, and the costs have been fixed and agreed upon and apportioned and paid. Now the legislature has blazed the way so as to avoid further disagreement and appeals to the courts because of disagreement between the two boards, and has pointed out the method in which this joint waterway may be kept serviceable, and if necessary enlarged and made more serviceable. When such a ditch needs to be cleaned out, enlarged or repaired, any owner of any lot of land which has been assessed for its construction may make a statement in writing to either of said boards of commissioners, setting up such necessity. When this is done, the law fixes the duty of the board thus applied to, and makes the duty very plain, and when it has performed its duty and received the report and estimate of its officer appointed to examine the ditch, if the officer reports favorably to the improvement, then said board gives notice and forwards a copy of said report to the board of the other county, and it then becomes the duty of the boards of both counties to meet in joint session and apportion the expenses of such proposed improvement. The day for disagreement and refusal and litigation as to the improvement passed with the original location and construction of the ditch, because the necessity of action has been found by the board to which the land owner made the written statement, and who appointed the officer to examine the ditch and its condition and make the estimate and report.

It surely was not the intention of the law-making power that so fully recognized the necessity of joint county ditches and their construction, and provided for them, that after it was all done a joint method of keeping them up should not be pursued, but that one board, without the other, and that board, the board of the upper county, could facilitate the speed of flow and acceleration of water, and tax beyond its capacity the outlet and make unavailable the very purpose to the lower county, and in fact to both counties, for which the joint action had at first been taken and the ditch had been originally located and constructed, and hence the enactment of Sec. 4510-11 Rev. Stat.

It is true the commissioners of the upper county may abandon the proposed construction of the joint county ditch, but that is not the case here. The joint county ditch has been constructed, and the effort here made is not to abandon, but to make it of more worth and service to the upper county, and that to the damage of the plaintiff. So that the majority of the court is of the opinion that the proceedings taken by the com-

missioners were not in accordance with the laws in such case made and provided, and are inoperative and void.

There can be but little doubt that the outlet below this plaintiff's land north of the Wood county line is insufficient to meet the requirements which this proposed improvement will demand of it. Redfern's land is at the county line; at the county line the proposed ditch ends at the present bottom of the old ditch upon a level or grade with it. The engineer, Mr. Phifer, made no examination below the county line with a view to determining the question of outlet and overflow. He says he was not ordered to do this and did not do it.

We think the evidence clearly shows that to make this improvement as contemplated will not be of benefit but by accelerating the speed of the water flow and by causing the water which took days perhaps to pass, to reach his land probably in as many hours, the place where there should be a sufficient outlet, will cause his land, which is not high land, to be overflowed at every considerable flood, and we think that this is a burden which ought not to be placed upon him, when, by taking the necessary legal steps, it could be avoided, and that before the improvement is made a sufficient outlet should be secured by proceedings pointed out by the statute. That the commissioners acted without legal authority does not appear from any defect in the record of this proceeding. It is not disclosed by this record that the ditch which is to be cleaned and deepened and widened is a joint county ditch, or any part of a joint county ditch, so it would not appear from any examination of the record, or from any information that the record imparts, that the action of the commissioners is irregular. "The steps are regular in form so that the illegality does not appear on the face of the proceedings." Yet, while this is true, it appears from sources other than the face of the record, that the board of commissioners proceeded contrary to the law and without jurisdiction, so that there being no adequate remedy pointed out by the law, we think that injunction will lie. The court, therefore, finds for the plaintiff, and perpetually enjoins the defendants as they are thus proceeding with this improvement, and this at the cost of the defendants, and the case is remanded for execution.

DAY, J., dissents.

*Blackford & Byal,* for plaintiff.

*C. E. Jordan* and *J. Poe,* for defendants.